UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


GUSTAVIA HOME, LLC.,              *      Case No. 17-CV-04262 (IL)
                                 *
            Plaintiff,           *      Brooklyn, New York
                                 *      September 6, 2018
      v.                         *
                                 *
EAST 93 HOLDINGS, LLC, et al.,*
                                 *
            Defendants.          *
                                 *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *

        TRANSCRIPT OF CIVIL CAUSE FOR PRETRIAL CONFERENCE
          BEFORE THE HONORABLE RAYMOND E. REYES, JR.
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:            DANIELLE P. LIGHT, ESQ.
                              Hasbani & Light, PC
                              450 Seventh Avenue, Suite 1408
                              New York, NY  10123

For the Defendants:           SHANE D. WAX, ESQ.
                              Berg & David, PLLC
                              266 Broadway, Suite 503
                              Brooklyn, NY  11211




Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 10:44 a.m.)

2          THE CLERK:  Civil cause for pretrial conference,

3    docket no. 2017-CV-4262, Gustavia Home, LLC vs. East 93

4    Holdings, LLC.

5          Counsel for plaintiff, please state your name for

6    the record.

7          MS. LIGHT:  Danielle Light on behalf of Gustavia

8    Home, LLC.

9          THE CLERK:  Counsel for the defendants, please state

10   your name for the record.

11         MR. WAX:  Shane Wax on behalf of Defendant East 93

12   Holdings.  Good morning, Your Honor.

13         THE COURT:  Good morning.  Okay.  So you filed

14   various motions, pre-motion letters, looks like there are two

15   of them, for an appointment of a receiver, correct?

16         MS. LIGHT:  Yes, Your Honor.

17         THE COURT:  It's unclear, unless I'm missing

18   something, whether Judge Glasser wants me to deal with that or

19   not.  Well, let's put that aside for the moment.

20         Are you done with your discovery or largely done

21   with it or what?

22         MS. LIGHT:  I believe we're largely done with it.

23   The only outstanding discovery is that we requested to depose

24   Joel Leibovitz, who is the sole member of defendant East 93.

25   We had the opportunity to depose Sam Leibovitz, but most of

1    his responses were I don't know.  He's the managing --

2          MR. WAX:  He's the manager.

3          MS. LIGHT:  He's the manager for the LLC.

4           But after we did his deposition and saw that he

5    literally knew close to nothing about the foreclosure action

6    and the affirmative defenses, we served a demand to depose

7    Joel Leibovitz, which is his brother, who is the only member

8    of the LLC.

9          We haven't received a response to that notice of

10   deposition.  But I spoke with counsel outside and he said they

11   weren't really going to push back, but that Joel Leibovitz is

12   in Canada.

13         So we have to see at this point whether we would do

14   it by video or maybe do written interrogatories or something.

15   Because, I mean, like I said, Sam Leibovitz, when we asked him

16   about his affirmative defenses, knew nothing.  So we just want

17   to do that.

18         MR. WAX:  I would like to add we do object, not

19   strenuously.  I understand they're technically entitled to

20   seek his deposition under the rules.  He doesn't have the

21   information that they're seeking.

22          The information they're seeking, I submit, is in

23   their possession, if anyone's possession.  It's they had the

24   opportunity to depose the manager.  The member is not going to

25   have any more specialized knowledge.

4

1          I suggested to opposing counsel we submit a

2   deposition by written questions because he's in Canada or we

3   could submit an affidavit saying I don't have any further

4   information outside of the deposition.  Alternatively, if they

5   want --

6          THE COURT:  So no one from --

7          MR. WAX:  -- to have a deposition in Canada.

8          THE COURT:  -- no one from the LLC knows what's

9   going on?  They don't know about their affirmative defenses?

10         MR. WAX:  Well, the questions that were asked at --

11  they don't know is not about information the LLC would have.

12         It's about whether plaintiff mailed required notices

13  that are required by statute and by the mortgage itself,

14  whether they were mailed to the initial borrower.  So we're

15  not going to have information about whether notices were sent

16  to the borrower.  I guess.  We're not the borrower.

17         MS. LIGHT:  I'm sorry, Your Honor.  Just to respond

18  to that.  But their defenses are that they were not received.

19  So how do you know they weren't received?

20         MR. WAX:  The defense is that they were not sent.

21         MS. LIGHT:  Okay.  Are you sure?  Because when I

22  interpreted that --

23         THE COURT:  Well, hold on.  Hold on.

24         MS. LIGHT:  Yeah.

25         THE COURT:  How would they know whether they were

1    sent or not if they're not the borrower and they're not the

2    lender?  And is this just a defense made up by a lawyer who's

3    defending the case or is this real?

4              MR. WAX:  These are defenses that are very commonly

5    asserted in foreclosure actions under state law that are

6    generally interposed by the attorneys themselves.

7              THE COURT:  Yeah.  And Rule 11 says you have to have

8    a good-faith basis to do that, right?

9              MR. WAX:  I understand.

10             THE COURT:  Not just everyone does it.  If that

11   defense worked, no one would be in jail because everyone

12   commits crimes, everyone smokes weed.

13             MR. WAX:  All right.

14             THE COURT:  Are you really going with that?

15             MR. WAX:  Your Honor, it's --

16             THE COURT:  Don't --

17             MR. WAX:  I don't want to not answer your question.

18             THE COURT:  Did you do the answer?  Is it your

19   answer or someone else in your office?

20             MR. WAX:  I wrote the answer.  I wrote the answer.

21             THE COURT:  All right.  Then if your client doesn't

22   know, has no knowledge of whether these notices were sent, you

23   don't have personal knowledge of that.  Otherwise you can't

24   defend your client --

25             MR. WAX:  Right.

1            THE COURT:  -- because then you become a witness.

2    And if all you're doing is asserting a defense that is

3    commonly asserted in these types of cases, that's problematic.

4            MR. WAX:  I would assert that it was my mistake.  It

5    should have stated -- the answer should have stated upon

6    information and belief.  But I --

7            THE COURT:  You still need a good faith basis to do

8    that.

9            MR. WAX:  But, Your Honor, I understand.  I

10   appreciate your concerns here.

11           And I would also submit that -- not to push, you

12   know, switch the topic here, but I think plaintiff's complaint

13   falls into the same problems in Rule 11.

14           THE COURT:  So then maybe you both should send Rule

15   11 letters to each other and let the chips fall where they

16   may, let the Court decide.  It could be that the complaint

17   lacks a good faith basis.  And the answer too.  So both sides

18   get sanctioned.

19           I mean, I got to tell you -- I got to tell you --

20   this is -- a loan was made, right?  Wasn't repaid.  Your

21   client wasn't the original borrower, correct?

22           MR. WAX:  My client was not the original borrower.

23   I don't know that a loan was made.  This was a credit line

24   agreement.

25           THE COURT:  Okay.  This is about two people fighting

1    about money.  All right.  You're all on notice.  Your clients

2    and you guys are on notice.

3           If you're not a hundred percent right, you're going

4    to get -- you're going to get burned.  So you either fix it

5    like by the end of next week or you risk it.

6           You want this gentleman's deposition?

7           MS. LIGHT:  Your Honor, yes, we would like to go

8    forward with that.

9           THE COURT:  All right.  I'll give you by -- until

10   the end of next week to figure out whether you're going to do

11   it by written questions, video conference, telephone,

12   whatever.  All right.  So you figure that out.

13          If there's no agreement, then I want a letter by

14   next Friday.  A motion to compel you could call it, whatever

15   you want.  A response the following week.

16          And so that's by the 14th, I'll get the letter.  By

17   the 21st, I'll get the response.  I'll decide it for you.

18          And you're going to have -- one way or the other,

19   whether it's -- in whatever form the deposition's going to

20   take, that's going to be completed by October 5th.

21          So you need to -- if what you want is written

22   questions, then you need to prepare them and submit them with

23   your motion to compel saying we want him to answer these

24   questions.

25          So that way we could -- everything's teed up for

1        October 5th.  Be done with it.

2                Or if you want, if you want a live deposition,

3        whether it's by telephone, videotape, or in person, you don't

4        have to submit those questions.  But that deposition's going

5        to take place by October 5th.

6                THE COURT:  And I got to say, this really -- that

7                MS. LIGHT:  Okay.

8        it's really annoying on both ends.  Either a line of credit or

9        a loan was made.  Either it was or it wasn't.  You don't have

10       proof of that yet?

11               MS. LIGHT:  We do, Your Honor.  We've provided

12       everything to them.  They still are questioning it.  We have a

13       HUD.  I've spoken with the borrower's attorney.  She's

14       represented by Diane Bernstein on several occasions.

15               In fact, they were really close to reaffirming the

16       debt.  She acknowledges everything.

17               So I don't really know what he's talking about.  I

18       mean, you know -- so I understand it's their position.  But in

19       terms, we believe we absolutely have a good faith action.

20               THE COURT:  Did you provide that information to

21       them?

22               MR. WAX:  This is the first time I'm hearing of

23       this.

24               MS. LIGHT:  Yes.  Abraham David did the deposition

25       in my office.  And we had -- in fact --

9

1             THE COURT:  A deposition of the --

2             MS. LIGHT:  Of Sam Leibovitz, the managing member.

3             They've also deposed my client.  Who, at the

4  deposition, they made him read through the note.  They flew

5  down to Florida to do the deposition.  They read through the

6  note.

7             And then there's -- in the note itself, there's a

8  reference to -- I don't remember what the document is called

9  -- some like collateral -- like some collateral or rider.

10            THE COURT:  You told me about the borrower's

11  attorney?

12            MS. LIGHT:  Yes.

13            THE COURT:  And then you morphed into Sam Leibovitz.

14  He's not the borrower's attorney.

15            MR. WAX:  I have no knowledge of any --

16            MS. LIGHT:  No.  No.

17            MR. WAX:  -- communications or discovery involving

18  the borrower.

19            THE COURT:  Who is the borrower attorney?  Diane

20  who?

21            MS. LIGHT:  Diane Bernstein.

22            THE COURT:  All right.  And what did she tell you?

23            MS. LIGHT:  We've spoken multiple times about the

24  debt.  And she said on behalf of her client that her client

25  knows about the loan.

10

1          She doesn't dispute ever obtaining the loan.  We had

2     discussed them reaffirming the debt and potentially -- we were

3     trying to get the loan paid off one way or another.

4               THE COURT:  So the loan was for a piece of property?

5               MS. LIGHT:  Yes.  In Brooklyn on East 93rd Street.

6     And Ms. Sing owns that property.

7          And then eventually, what I believe happened is is

8     that once she fell into default, she sold the property to East

9     93 Holdings.

10         So East 93 Holdings is now the title owner, but

11    they're not on the loan documents because Ms. Sing is.  She

12    was the owner of the property for several years I believe

13    until she actually sold it to East 93.

14              THE COURT:  So the original loan, was it backed up

15    with a mortgage?

16              MS. LIGHT:  Yes, Your Honor.  That's why this is a

17    in foreclosure.

18              THE COURT:  And it's recorded?

19              MS. LIGHT:  Yes, Your Honor.  And they bought it

20    subject to.  They bought it for -- I believe he said at the

21    deposition -- $30,000.  And the property's worth -- what we

22    believe is -- about $450,000.

23         There are tenants at the property.  Allegedly they

24    were paying rent, but they haven't paid rent for the last six

25    months.  I believe there are three tenants.

1          I sent them letters letting them know, making sure

2     they're aware of this foreclosure action.

3          And, you know -- so they basically -- I mean, it's

4     -- you know, going outside of the scope of this case, it's not

5     even a good-faith purchase.  They bought a $450,000 from this

6     poor lady.  Ms. Sing is like an 80 something year old.

7          MR. WAX:  Your Honor, if I may interrupt?

8          THE COURT:  No.

9          MR. WAX:  This is getting beyond --

10         THE COURT:  No.

11         MS. LIGHT:  She's like an 80-something-year-old

12     lady.  She accepted $30,000 to purchase this property.  All

13     we're trying to do is just get back the money that she

14     received.

15         And we believe we have established that.  And we

16     believe we absolutely have a good faith basis for this action.

17         THE COURT:  All right.

18         MR. WAX:  Your Honor, first of all, I believe there

19     might be a discovery violation going on here to the extent we

20     have never been informed about any of these conversations, or

21     any documents, or anything going on between plaintiff and the

22     borrower, or Diane Bernstein.

23         THE COURT:  Did you ask for that?

24         MR. WAX:  We asked for all persons with knowledge.

25     We had sent discovery demands a year ago that asked for all

1     the relevant information and this is the first time I'm

2     hearing about any conversations with the borrower or

3     borrower's attorney that she might be reaffirming a debt or

4     anything.  That's discoverable information.

5            THE COURT:  Did you -- wait.  No.  No.  No.  No.

6     No.  No.  No.  No.

7            MR. WAX:  If they have -- we asked for -- reason to

8     believe that they know that there's a valid debt.

9            THE COURT:  That's an interesting take on the

10    discovery obligations.  You've asked for -- you said you asked

11    for people with knowledge.  Right?

12           Did you identify Ms. Sing?

13           MS. LIGHT:  I don't believe so.  She doesn't work

14    for my client.  She's not even a party to the action.

15           MR. WAX:  But the attorney of Ms. Sing would be

16    person of knowledge.

17           THE COURT:  Well, Ms. Sing would first be a person

18    with knowledge because she's the one who signed the loan

19    documents and all that.  Right?

20           MS. LIGHT:  Right.

21           THE COURT:  And you knew about that.  Why didn't you

22    identify them?

23           They're her discussions with the attorney.  You're

24    not entitled to -- I don't think you're entitled to know that.

25           But why didn't you -- why didn't you identify

13

1   Bernstein and Ms. Sing as people with knowledge, specifically

2   because you knew that they were challenging the loan?

3            MS. LIGHT:  Well, Your Honor, I guess I'd have to go

4   back and look at the sequence of events.  I only took over the

5   file recently.  And I believe discovery, in terms of written

6   discovery, was completed a long time ago.

7            THE COURT:  Yeah.  But you have a -- you have an

8   obligation to supplement discovery until the day the trial's

9   over.

10           MS. LIGHT:  Your Honor, you're obviously a hundred

11  percent right.  I have to go back and find out.

12           THE COURT:  Not obviously.

13           MS. LIGHT:  It's possible --

14           THE COURT:  I'm not always right.

15           MS. LIGHT:  It's possible though that other

16  attorneys in his office were cc'd on the emails with Diane

17  Bernstein.  Because I only got her because the prior attorney

18  was talking to her.  So I have to double check.

19           Because, to be honest, I haven't really been dealing

20  with Shane so much on this file.  I mean, he's not the one

21  that --

22           THE COURT:  Okay.  Here's what we're going to do.

23  Every attorney who's touched this is going to come.  You're

24  going to bring everybody in to court because neither of you

25  has a handle on what's going on.

1          And someone's playing games.  Or maybe everybody's

2     playing games.  And I'm really not -- my patience has run

3     thin.

4          And I know you've got what three firms on the

5     plaintiff's side?  One, two --

6          MS. LIGHT:  Well, now it's just my firm.

7          THE COURT:  Well, there's -- they haven't been

8     terminated these other firms.  And, you know, you're in for a

9     penny, you're in for a pound.

10          So you're going to get everybody from your office,

11     from Margolin & Weinreb.  You're going to get the -- whoever

12     is the decision maker for Gustavia.

13          You're going to get everyone in your firm who's

14     touched this case.  Your clients.  The managing person.  The

15     joker who got deposed who doesn't know anything.

16          You're going to get everybody together and we're

17     going to have a discussion about it and we're going to find

18     out who's the one who's playing games.  All right?

19          You can't buy a debt -- buy a property for $30,000

20     that has debt on it and expect to get away with it.  All

21     right?  Bad business decision.  Judgment day is coming.

22          You can't give loans and not dot your I's and cross

23     your T's and do all the proper filings and all the proper

24     notices.

25          So, you know, you folks, your clients can spend

1    money on you litigating this.  You could put your licenses at

2    risk if you're violating Rule 11, because a referral will be

3    made to the disciplinary committee.

4           You can do whatever you want, but I'm giving you all

5    the opportunity to stop this nonsense and we're going to deal

6    with it.  Okay?

7           MS. LIGHT:  Okay.

8           MR. WAX:  May I ask one question, Your Honor?

9           THE COURT:  Yes.

10           MR. WAX:  You mentioned earlier about fixing the

11    potential Rule 11 violations.  Is that leave to amend the

12    pleadings to --

13           THE COURT:  No.  That's not leave to amend the

14    pleadings.  If you want to amend your pleading to cure a Rule

15    11 violation, write me a letter.  All right.

16           We're sticking with what you've done so far.  You

17    have to cure it.  Okay?  And you have to cure it the right

18    way.

19           If you want to -- I don't have the case management

20    plan in front of me, but amendment of pleadings I think is

21    probably -- the date has probably come and gone for that.

22           MS. LIGHT:  Right.

23           THE COURT:  So if you want -- if you want to amend,

24    you write me a letter and say, look, we realize this isn't a

25    proper affirmative defense.  We'd like to withdraw it and file

1        an amended pleading, an amended answer.

2                 If you think there's something wrong with the

3        complaint, you've got to do the same thing.  All right.

4                 You all could save yourselves a hell of a lot of

5        problems and get out from under crazy Judge Reyes if you

6        resolve this case.  All right?  Throw good money after bad --

7        both sides -- is what you're doing.  Okay.

8                 I suggest you get a transcript of this conference,

9        show it to your clients, because then they'll know we're all

10       going to sit down and work this out.  And it may not be worked

11       out to everyone's satisfaction, but it will get worked out.

12       All right.

13                So I'm sticking with the current schedule of the

14       depositions, and the letters, and all of the that.  I'm going

15       to give you the opportunity to avoid that.

16                If by the 14th of September, which is the date that

17       the plaintiff needs to submit a letter motion to compel the

18       deposition -- if by that date you all can agree to either

19       resolve this case, or have a settlement conference where

20       everyone, attorneys, clients, everyone can come and we can

21       talk about all these issues, all this nonsense that's going

22       on.

23                If you can agree to that, then you can tell me that

24       on the 14th.  We'll hold off on the deposition.  We'll hold

25       off on the Rule 11.  We'll hold off on amending the pleadings.

17

1    And we'll come up with a date for that settlement conference.

2            If you can't -- if you can't agree to that --

3    because I'm not going to force people to come sit with me and

4    get taken out to the wood shed.  If they don't want to do

5    that, that's fine.  Then we have the dates for the motion to

6    compel, the response.  You file your request to amend,

7    whatever.  And we'll continue on.

8            I'll find out from Judge Glasser if he wants to deal

9    with the motion to appoint a receiver or if he wants me to

10   deal with it.

11        MR. WAX:  Your Honor, on that note, it's plaintiff's

12   motion to appoint a receiver, and defendant has asked to move

13   for summary judgment.

14        THE COURT:  Well, I'll find out if he wants me to

15   deal with that summary judgment -- that pre-motion letter for

16   summary judgment as well.

17            What is the basis for summary judgment?

18        MR. WAX:  Several bases, first of which is standing.

19   Based through discovery, we've discovered that plaintiff does

20   not have properly endorsed notes.

21            They're basing -- apparently basing their standing

22   on allonges, which were not properly annexed and apparently

23   not in their possession.  They don't have a written assignment

24   of the mortgage and the note, just the mortgage.

25            We also argue based on the discovery given, we've

1    received, there's no evidence of a default.  But now I'm

2    hearing for the first time they may possess documents or other

3    information that may show there's a default.

4            But then there's also -- it's not in my letter,

5    because we were limited to five pages -- statute of

6    limitations.  This case was commenced about I think ten years,

7    11 years after the note was supposedly defaulted on.  The

8    statute of limitations is 6 years.

9            There's at least several years of payments, if any,

10   due that are barred.  So there's a couple of grounds for the

11   motion.

12           THE COURT:  All right.  How much was the original

13   loan?

14           MS. LIGHT:  It was about $200,000.

15           THE COURT:  And what's left on it?

16           MS. LIGHT:  It's almost the full amount.  I think

17   only one payment was made.

18           THE COURT:  When was -- when did she default on it?

19           MS. LIGHT:  2008.

20           THE COURT:  You have six years, right, from --

21           MS. LIGHT:  Six years.

22           So what would happen is is when we -- let's say we'd

23   be permitted to proceed, we would waive all payments that were

24   due more than six years ago.  We're not going to seek to

25   collect anything of course that's part of a statute of

1    limitations.

2           And that's what he was saying.  He was saying that

3    there were payments that we can't collect.  So if there are

4    payments that are barred by the statute of limitations, we

5    will not be seeking to collect them.

6           THE COURT:  What about -- to foreclose, you need

7    possession of the note, correct?

8           MR. LOGAN:  Yes, Your Honor.  They haven't inspected

9    the original note, so I don't really know what their basis is.

10          THE COURT:  Do you have it?  Do you have the

11   original note?

12          MS. LIGHT:  Yes, absolutely.  Yes, we do.  And so

13   they --

14          MR. WAX:  I believe we asked to inspect it --

15          MS. LIGHT:  Right.

16          MR. WAX:  -- and it was supposed to be at the

17   deposition and it wasn't.

18          MS. LIGHT:  Right.  And we told -- we told David

19   Berg before the deposition I can either bring it to you in

20   Brooklyn or you can come to my office in Manhattan and I would

21   produce it for them.

22          MR. WAX:  We can work on that.

23          MS. LIGHT:  I'd be happy to produce it to them.  But

24   their basis is not based on actual inspection of a note.  It's

25   based on the copies filed --

20

1            THE COURT:  All right.  All the more --

2            MR. WAX:  Our basis is based on their client's

3    testimony.

4            THE COURT:  This is all the more reason why you

5    should bring -- you should bring your principals, your

6    clients, to meet with me.

7            Because this is -- I was going to use an expletive,

8    but I won't -- this crap may fly down the street in King

9    Supreme.  Not here.  All right.

10           Shame on you, your client.  They're here all the

11   time.  They've probably had, you know, a couple of hundred

12   cases in this courthouse in the 12 years that I've been here.

13   They know better.

14           And shame on you for, your client, for these

15   ridiculous affirmative defenses that they have no knowledge

16   of.

17           So we've got our schedule.  Let me know by the 14th

18   if you are willing to bring your clients, or you've settled,

19   or you want to go forward with this motion to compel the

20   depositions -- deposition.  And we'll deal with it that way.

21           Again, I'll find out from Judge Glasser what he

22   wants to do with the summary judgment motion and the motion to

23   appoint a receiver.  All right.

24           MS. LIGHT:  Thank you.

25           MR. WAX:  Thank you, Your Honor.

1          THE COURT:  Okay.  Thank you.

2       (Proceedings concluded at 11:08 a.m.)

3

4    I, CHRISTINE FIORE, court-approved transcriber and certified

5    electronic reporter and transcriber, certify that the

6    foregoing is a correct transcript from the official electronic

7    sound recording of the proceedings in the above-entitled

8    matter.

9

10   *Christine Fiore*

11   _____       September 13, 2018

12   Christine Fiore, CERT

13

14

15

16

17

18

19

20

21

22

23

24

25